United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| **United States of America** | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 21-cr-10184-NMG |
| **Sherriff Cooper,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

In February, 2024, after an eight-day jury trial, defendant Sherriff Cooper ("Cooper" or "defendant") was convicted of one count of sex trafficking of a minor or sex trafficking by force, fraud and coercion, in violation of 18 U.S.C. § 1591(a)(1), (b)(1) and (b)(2), one count of transportation of a minor with intent to engage in a criminal sexual activity, in violation of 18 U.S.C. § 2423(a), and one count of forced labor, in violation of 18 U.S.C. § 1589(a). Cooper has filed numerous pro se motions before and after his trial even while represented by counsel.

In April, 2024, this Court ultimately allowed defendant's motion to proceed pro se during the sentencing phase of this

case but directed his appointed counsel, Ian Gold, to continue to act as stand-by counsel (Docket No. 332).

Pending before this Court are pro se defendant's motions for acquittal pursuant to Fed. R. Crim. P. 29 and a new trial pursuant to Fed. R. Crim. P. 33 (Docket Nos. 361, 362).  For the following reasons, defendant's motions will be denied.

## I. Legal Standard

### A. Rule 29

Under Fed. R. Crim. P. 29(c), the Court "may set aside the verdict and enter an acquittal".  In ruling upon a motion for judgment of acquittal under Rule 29, the Court must "consider the evidence as a whole taken in the light most favorable to the [g]overnment" and decide whether a rational jury could have found guilt beyond a reasonable doubt. United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982).  If the guilty verdict is supported by a "plausible rendition" of the record, the Court must not disturb it. United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002) (citation omitted).

### B. Rule 33

The Court's authority to order a new trial "is greater than its authority to grant a motion for acquittal." United States v. Ruiz, 105 F.3d 1492, 1501 (1st Cir. 1997).  The Court may vacate

any judgment and grant a new trial "if the interests of justice so require." Fed. R. Crim. P. 33(a).  The remedy of granting a new trial should be used sparingly and is appropriate "only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010) (citation omitted).

## II. Application

In nearly 60 pages of briefing, Cooper raises a litany of perceived flaws with his trial, many of which this Court has previously addressed and some of which are incomprehensible. The Court will address Cooper's colorable arguments but before it does so, it will reflect on the role of the trial court at this stage.

In his motions, Cooper attempts to relitigate issues addressed at the jury trial or in earlier pleadings and to attack the credibility of witnesses rather than present new evidence.  In particular, Cooper contends that Ms. J.C., the alleged victim in the case and a critical witness for the government, repeatedly committed perjury and misled the jury.

Courts confronted with a motion for acquittal "do not weigh the evidence or make any credibility judgments, as those are left to the jury." Merlino, 592 F.3d at 29.  While a motion for

new trial grants district courts more discretion, they still may "intrude upon the jury function of credibility assessment" only in exceptional cases. Id. at 32-33 (citation omitted); see also United States v. Rivera Rangel, 396 F.3d 476, 486 (1st Cir. 2005) (explaining that courts do not sit as thirteenth juror). Here, the Court will not second-guess the credibility assessments made by the jury. Ms. J.C. was on the witness stand for four days and was vigorously cross-examined and impeached by defense counsel. Contrary to Cooper's assertions, nothing in the record suggests that the government had reason to believe that Ms. J.C. perjured herself yet continued to rely on her testimony.

### A. Rule 29

In his motion for acquittal, Cooper challenges whether Massachusetts was the proper venue for Counts I and III of the indictment and questions whether the government proved that his domination motivation for travel between New York and Massachusetts caused Ms. J.C. to engage in prostitution.

First, while the government does not raise the issue, the Supreme Court recently explained that retrial, not acquittal, is the proper remedy for improper venue. See Smith v. United States, 599 U.S. 236, 253-54 (2023); see also United States v. Morris, 2024 WL 3590699, at *3 (8th Cir. July 31, 2024).

Accordingly, a Rule 29 motion is not the proper vehicle to challenge venue.

Regardless, the government proved that venue was proper for both counts. With respect to Count I (sex trafficking), Cooper insists that the government failed to demonstrate that he posted any BackPage.com advertisements for Ms. J.C. in Massachusetts. As this Court has previously explained to defendant, the acts enumerated in Section 1591(a)(1) constitute means, not elements (Docket No. 235). The government did not therefore need to prove that Cooper advertised Ms. J.C. to obtain a conviction because "advertises" was one of many means enumerated in that statute. In addition, as the government notes, Cooper's conviction under Count I did not rest on the BackPage.com advertisements alone. The jury heard extensive testimony about conduct that Mr. Cooper undertook in Massachusetts that related to his sex trafficking conviction.

With respect to Count III (forced labor), Cooper claims that venue was improper in Massachusetts because it must be where the "essential conduct elements took place" and all of the essential conduct here occurred in New York, not Massachusetts. The Court is satisfied that venue was proper in Massachusetts for Count III. First, the government needed to prove venue was proper as to each count by a preponderance of the evidence, not

beyond a reasonable doubt. See United States v. Salinas, 373 F.3d 161, 163 (1st Cir. 2004). The jury heard testimony that on at least one occasion, Cooper transported Ms. J.C. from Massachusetts to New York to obtain fake identification so that Ms. J.C., who was underage, could gain employment at a strip club in New York City.

The Court agrees with the government that the record suggests Mr. Cooper devised his plan in Massachusetts and that the forced labor statute contemplates a continuing offense because its focus is "on obtaining the labor of services of the victim, through means that are not discrete in nature." United States v. Majeed, 2023 WL 4826849, at *6 (D. Kan. July 27, 2023) (finding the 2000 version of 18 U.S.C. § 1589 constituted a continuing offense in context of statute-of-limitations analysis).

Finally, with respect to Count II (interstate transportation of a minor for the purpose of engaging in prostitution), Cooper argues that no reasonable juror could find that the dominant or motivating purpose of his travel between Massachusetts and New York was his desire to have Ms. J.C. engage in prostitution. The Court disagrees. The jury was correctly instructed on the law and the evidence at trial supported the jury's verdict. Cooper's insistence that a

different, innocuous intent led to his travel does not undermine that result. See United States v. Gaudet, 933 F.3d 11, 17-18 (1st Cir. 2019); see also United States v. Rivera-Ruiz, 244 F.3d 263, 266 (1st Cir. 2001) (explaining that purpose of Rule 29 motion is not to "assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence" (citation omitted)).

### B. Rule 33

In his motion for a new trial, Cooper argues that 1) the prosecution engaged in misconduct when it violated its Brady obligations, did not explain how it searched BackPage.com records and failed to make Task Force Officer Robert DiSalvatore available to testify; 2) the ineffective assistance of his counsel warrants a new trial; 3) his rights under the Confrontation Clause of the Sixth Amendment were violated when he was not permitted to present evidence that he did not introduce Ms. J.C. to prostitution; and 4) Ms. J.C. was not a credible witness and the government should not have proffered her false testimony.  Having already addressed his fourth argument, the Court will discuss only the first three here.

### 1. Prosecutorial Misconduct

First, the prosecution was under no duty to proffer any record documenting its searches of BackPage.com advertisements.

Second, the government was under no duty to call Officer DiSalvatore to the stand even if it initially identified him as a potential witness. See United States v. Houghton, 554 F.2d 1219, 1225 (1st Cir. 1977) ("While the government has a duty to make witnesses available for the defense, it is under no obligation to call them to the stand.").

Defense counsel could have but did not call Officer DiSalvatore as a witness. On the fourth day of trial, which was a Friday, defense counsel called Task Force Officer Renee Kelley, a case agent in Cooper's case, to testify. Defense counsel purportedly learned through her testimony that Officer Kelley was relatively new to the case, having been added to it only in October, 2023. At side bar, after examining Officer Kelley, defense counsel informed the Court,

> I did not have an opportunity to speak with Officer Kelley before, so I was not aware the extent to which she was just minding the case in this matter, so I may seek to call another law enforcement agent.

The Court responded affirmatively and dismissed the jury for the weekend.

That following Monday, on the fifth day of trial, defense counsel informed the Court that he planned to subpoena Officer DiSalvatore that day.  At the end of that trial day, defense counsel again told the Court that he expected that Officer DiSalvatore would testify the next day.  But on Tuesday, the sixth day of trial, the defense rested without mentioning Officer DiSalvatore or any pending subpoena.

In an affidavit attached to defendant's pending motion, Attorney Gold now explains that he attempted to serve Officer DiSalvatore with a subpoena but that his process server could not locate him.  Ultimately, the Court does not fault the government for defense counsel's failure to subpoena Officer DiSalvatore in time.

Finally, defendant claims that the government violated its <u>Brady</u> obligations by failing to notify him prior to trial of a "TracFone" that contained relevant evidence.  It is unclear whether Cooper believes the government continues to possess the TracFone or, instead, that Ms. J.C. lied during her testimony about the TracFone.  The government explained at trial and reiterates in its opposition that it made available to defendant extractions of the phones that Ms. J.C. produced to the FBI in January, 2022.  There is an obvious explanation for why the government did not produce any extraction of the TracFone and

-9-

claims not to possess it: at trial, Ms. J.C. testified that Cooper destroyed the TracFone in June, 2018 after his vehicle was stopped by the Massachusetts State Police.

### 2. Ineffective Assistance of Counsel

Cooper also argues that his defense counsel was ineffective because he failed to obtain accurate employment records and elicited testimony that revealed that Cooper was incarcerated.

According to Cooper, defense counsel rendered ineffective counsel when they "obtained a sign in sheet as opposed to actual work record or W2 forms." Although he does not specify, the Court presumes Cooper is referring to his employment as a custodian at the Grand Concourse Charter School in New York. He claims that those records resulted in him being "ambushed" by the prosecutor and being impeached.

To succeed on an ineffective assistance of counsel claim, a defendant must show that 1) counsel's performance was deficient and 2) that deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the prejudice prong, he must show that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Id. at 694. Cooper does not meet that demanding standard because his work records are only marginally relevant to his

-10-

defenses against the charged conduct. There is no reason to believe that their introduction would have produced a different result.

Cooper also claims that Attorney Gold prejudiced him when he asked Cooper where he attained his GED even though he knew it was while Cooper was incarcerated. The record reveals, however, that Attorney Gold initially only asked Cooper <u>when</u> he received his GED. Cooper then volunteered that he "actually obtained an actual GED while [he] was at Wyatt." At that point, Attorney Gold inquired whether Wyatt is a detention facility, and Cooper answered affirmatively. It appears that Cooper himself volunteered the arguably prejudicial information. Regardless, the Court agrees with the government that there is no reasonable probability that but for counsel's passing reference to Cooper's incarceration, his trial would have resulted in an acquittal.

### 3. Confrontation Clause

Finally, Cooper contends that he should have been able to rebut the government's use of a text message that he sent to Ms. J.C. stating, "sorry I put you into that game", by eliciting testimony that Ms. J.C. was previously involved in prostitution. According to Cooper, the government used the text message to suggest that he introduced Ms. J.C. to prostitution. While Cooper acknowledges that a victim's prior sexual acts are

-11-

generally not admissible in a sex trafficking trial under Fed. R. Evid. 412, he contends that an exception applies because the exclusion of his rebuttal evidence violated his constitutional rights. See Fed. R. Evid. 412(b)(1)(C).

Contrary to Cooper's contention, defense counsel did question Ms. J.C. about her introduction to prostitution.  On the third day of trial, defense counsel asked Ms. J.C., "Did you have prior experience of any kind with prostitution prior to meeting Mr. Cooper?"  Ms. J.C. responded that she did not. Defense counsel inquired again, asking, "None whatsoever?"  Ms. J.C. replied, "None."  Defense counsel moved on.

Defendant does not cite any other part of the trial transcript where his counsel tried unsuccessfully under Fed. R. Evid. 412 to question a witness about the "sorry for putting you in that game" text message.  In any event, further questioning about Ms. J.C.'s prior prostitution would have been properly barred. See United States v. Gemma, 818 F.3d 23, 34 (1st Cir. 2016) (finding no error where district court denied request for production of additional evidence regarding victim's prior prostitution and noting that "[a] number of other circuits have held that evidence of prior prostitution is irrelevant to a charge under § 1591(a), and thus is properly barred"); see also Fed. R. Evid. 412 advisory committee's note on 1994 amendment

(noting the rule generally seeks to bar evidence related to alleged victim's sexual behavior when offered for impeachment purposes).

## ORDER

For the foregoing reasons,

Defendant's motion for acquittal (Docket No. 361) is **DENIED**.

Defendant's motion for a new trial (Docket No. 362) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton  
Nathaniel M. Gorton  
United States District Judge

Dated: August 9, 2024